UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOANNE MARIE DREW, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTRATION )<br>COMMISSIONER, )<br>)<br>    Defendant ) | 1:11-cv-00240-GZS |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Joanne Marie Drew, an unmarried widow over 50, has severe impairments but retains the functional capacity to perform substantial gainful activity, resulting in a denial of Drew's application for disability insurance, supplemental security income, and widow's insurance benefits under Title II and Title XVI of the Social Security Act.  Drew commenced this civil action to obtain judicial review of the final administrative decision.  I recommend that the Court affirm the Commissioner's determination.

THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the Affirmation and Decision of the Decision Review Board (R. 4-5, Doc. No. 8-2), which decision affirms the Administrative Law Judge's determination of Drew's claim for widow's insurance benefits, and also denies Drew's additional claims for a period of disability, disability insurance benefits, and supplemental security income, which were not expressly resolved by the ALJ in his decision.  (Id. at 5.)  However, for purposes of the material findings of fact, the Decision Review Board has affirmed and adopted the findings made by the ALJ.  (Id.)  The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520,

416.920. (R. 9-19.) The ALJ's decision additionally evaluates Drew's qualifications for widow's benefits per 20 C.F.R. § 404.335. (R. 9.) Drew qualified to be considered for widow's benefits as of July 30, 2008, when her spouse died, and is entitled to these benefits if she can show disability beginning on or before September 30, 2011. (R. 11, ¶¶ 1, 2.)

At step 1 of the sequential evaluation process, the ALJ found that Drew has not engaged in substantial gainful activity since January 1, 2008, the date of alleged onset of disability. (R. 11, ¶ 3.) At step 2, the ALJ found that Drew has the following severe physical impairments: bilateral knee osteoarthritis; moderate bilateral carpal tunnel syndrome; bilateral foot/ankle instability; and obesity. (R. 12, ¶ 4.) The ALJ found depression/bereavement to be a non-severe mental impairment for social security purposes. (Id.) The finding regarding mental impairment is supported by psychiatric review technique forms supplied by consulting physicians. (R. 13, citing Exs. 3F, 8F.) At step 3, the ALJ found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 13, ¶ 5.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Drew's residual functional capacity. The ALJ found that Drew's combined impairments result in a capacity to perform light work, except that she may lift and/or carry 20 pounds occasionally and 10 pounds frequently, may stand and/or walk 3 to 4 hours in an 8-hour workday, may sit 6 hours in an 8-hour workday, may push and/or pull with the upper and lower extremities within tolerances for lifting and/or carrying, may occasionally balance, stoop, crouch, kneel, crawl, or climb ramps or stairs, must never climb ladders, ropes or scaffolds, may reach in all directions, must avoid constant forceful gripping or grasping, must avoid constant fingering involving rapid, alternating movements, and must avoid irregular terrain and unprotected heights. (R. 14, ¶ 6.)

At step 4, the ALJ found that this degree of limitation would not prevent Drew from performing past relevant work as a telephone solicitor, as it is generally performed. (R. 18-19, ¶ 7.) This finding resulted in the conclusion that Drew was not under a disability between January 1, 2008, and the date of the ALJ's decision. (R. 19, ¶ 8.)

On review, the Decision Review Board noted that the ALJ neglected to indicate that his findings also called for denial of Drew's claims for SSI benefits and for a period of disability insurance benefits. It corrected this omission by adopting all of the ALJ's findings related to the sequential evaluation process and finding that they also precluded an award of SSI or disability insurance benefits. (R. 5.)

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

Drew argues that the ALJ erred in assessing the extent of Drew's physical limitations. Drew contends that the treating source opinion offered by her primary care provider, Susan Piotti, PA-C, should have been given greater weight than the opinion of the consulting, examining physician, Edward Harshman, M.D. (Statement of Errors at 2-9.) PA-C Piotti's assessment of Drew's residual functional capacity (RFC) is that Drew cannot lift 10 pounds or more and cannot remain sitting/standing/walking (combined) for eight hours over the course of a workday. (Ex. 7F, R. 316 (March 23, 2010).[1]) Piotti also assessed that Drew cannot climb ramps, stairs, ladders, etc., or kneel, or crawl, and only occasionally can balance, stoop, and crouch. (R. 317.) The foregoing restrictions arise, according to Piotti, from foot pain, knee pain, and back pain. (R. 316-17.) Piotti also assessed reaching and manipulative limitations based on carpal tunnel syndrome. (R. 318.) In February 2011, Piotti sent a letter to the ALJ stating that Drew has, since March 2010, experienced "increasing pain in her knees, hands, and feet." (Ex. 12F, R. 346.) After reiterating the highlights of her earlier March RFC assessment, Piotti

---

[1] All of the medical evidence in this case is found at docket entry 8-7.

explained:

> Joanne has very painful arthritis in her knees for which she has had cortisone shots without much relief.  She has bilateral carpel tunnel syndrome with parathesia and pain in both wrists.  She has very painful multiple hammer toe contractures, metatarsalgia and significant metatarsophalangeal joint instability bilaterally, right worse than left.  She has seen orthopedic surgeon Vaughn Collette and Podiatrist Jared Wilkinson with regard to her knee and foot difficulties.
>
> Joanne will be 60 years old in October and she suffers a great deal to just move around to the extent that she is able.  While it is your call Judge Edwards as to her disability eligibility I believe the pain Joanne must deal with on a daily basis robs her of the stamina and strength to do any kind of employment on a consistent and reliable basis.

(Id.)  At Drew's hearing, a vocational expert testified that a person with the RFC assessed by Piotti would not be able to engage in substantial gainful activity in any occupation.  (R. 51.)

In tension with PA-C Piotti's opinion about the limiting effect of Drew's impairments is the report of physical examination provided by Dr. Harshman in September 2009.  (Ex. 4F.) Based on his clinical examination and findings, Dr. Harshman assessed "no significant impairment."  He concluded his report with the following assessment of Drew's capacity to engage in physical work activity:

> Per my findings, she can stand and sit with normal breaks, lift and carry as can an able-bodied woman her size, reach upward, push and pull, do fine finger movements, stoop, crawl, and occasionally climb stairs and ladders.  Crouching should be rare (knee crepitus).

(Ex. 4F, R. 311.)

The ALJ did not call a medical expert to testify at Drew's hearing.  In his decision, the ALJ identified obesity, knee osteoarthritis, carpal tunnel syndrome, and foot/ankle instability as severe physical impairments.  The ALJ then found that Drew has a residual functional capacity that is somewhat more limited than what Dr. Harshman suggested, but less limited than what PA-C Piotti assessed.  In particular, the ALJ placed Drew in the light exertion category, found

4

that Drew likely could spend between 3 and 4 hours on her feet and sit for 6 hours over the course of an 8-hour work day, and found that Drew could not tolerate gripping, grasping, and fingering on a constant basis.  (R. 14, ¶ 6.)  The ALJ rejected the notion that Drew could not reach, based on the absence of an underlying impairment that would limit this particular function.  (R. 18.)  Ultimately, the ALJ's decision turned on a step 4 finding that Drew failed to prove that she could not return to past relevant work as a telephone solicitor (Dictionary of Occupational Titles No. 299.357-014).  This occupation is classified as a sedentary occupation requiring only occasional walking or standing.

To render his compromise RFC finding, the ALJ "note[d] that [Drew's] subjective complaints are greater than the objective treatment records, and despite findings establishing the presence of severe medically determinable impairments, . . . attribute[d] little weight to her credibility."  (R. 15.)  Drew has not challenged the ALJ's credibility assessment and argues exclusively that PA-C Piotti's opinion should have received controlling weight.  The ALJ's decision resolved at step 4 of the sequential evaluation process.  At step 4, it is the claimant's burden to prove an inability to return to any type of substantial gainful activity she performed in the past.  It is also the claimant's burden to prove the limitations her impairments impose on her ability to perform work activity, a factual question that arises between steps 3 and 4 of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987);  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ observed at the hearing that Drew did not have any RFC opinion evidence from an "acceptable medical source," only from an "other source."  (R. 52-53.)  The Commissioner's regulations set up a hierarchy of medical sources, with licensed physicians, psychologists and certain other experts at the top.  It is essential to have evidence from such sources to establish the

existence of a "medically determinable impairment" at step 2 of the sequential evaluation process.[2] 20 C.F.R. §§ 404.1513(a), 416.913(a). "Other sources," such as nurse practitioners and physicians' assistants, cannot be relied upon exclusively to establish the existence of medically determinable impairments, but the Commissioner "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." Id. §§ 404.1513(d), 416.913(d). The Commissioner promises to "evaluate every medical opinion we receive," and to "consider . . . the rest of the relevant evidence we receive." Id. §§ 404.1513(b), (c), 416.913(b), (c). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . ." Id. §§ 404.1513(a)(2), 416.913(a)(2). In other words, RFC opinions from "other sources," such as a physicians' assistant, are not regarded as a "medical opinions."

In his decision, the ALJ did not reject PA-C Piotti's opinion out of hand. He considered it and discussed why he chose to give it "little weight." (R. 18.) In particular, the ALJ found Piotti's opinion both "excessive and inconsistent with Dr. Harshman's consultative examining assessment finding no limitations" and "inconsistent with her own examination findings." (R. 18.) The ALJ also canvassed the longitudinal record and found that the findings related therein by the acceptable medical sources, including their plans for non-intensive treatment, did not suggest a totally disabling condition and could be regarded as consistent with Dr. Harshman's clinical findings and assessment. (R. 17.) I do not find error in this approach.[3]

---

[2] In this case, there are underlying diagnostic records from acceptable medical sources. That explains why Drew's claims were not summarily rejected at step 2.

[3] By comparison, in Fernald v. Commissioner, No. 1:11-cv-00248-NT, another case addressed this quarter that involved a compromise RFC finding by the ALJ, I recommended a remand where a *non-examining*, consulting physician offered an opinion that there was *no* physical impairment, a treating physician offered an opinion of substantial physical limitation, and the ALJ purported to give substantial weight to the latter opinion, describing it as consistent with the longitudinal record. Given that presentation, I concluded that the ALJ had essentially strayed into territory reserved for the experts when he fashioned his RFC finding differently than the only medical source who considered the claimant's RFC. Here, by comparison, the consulting expert was an examining expert, who

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). To the extent that the decision turns on a credibility evaluation, the ALJ has leeway to consider what the "entire case record" reveals and what reasonable inferences it supports. 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4); see also Soc. Sec. Ruling 96-7p, 1996 WL 374186, *2, 1996 SSR LEXIS 4, *6 (S.S.A. July 2, 1996) ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). The claimant must demonstrate that the Judge's inferences were unreasonable; the kind of inferences that a reasonable mind would not accept as adequate to support a finding. Rodriguez v. Celebrezze, 349 F.2d at 496 ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner].")  As the First Circuit Court of Appeals has elsewhere observed:  "Where the facts permit diverse inferences, we will affirm the [Commissioner] even if we might have reached a different result." Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000, *4, 1994 U.S. App. LEXIS 14287, *14-15 (1st

---

offered his own clinical findings and functional capacity report; the treating source was an "other source," rather than an acceptable medical source; and the ALJ fairly regarded the examining expert's opinion to be consistent with the longitudinal record and findings related therein.

Cir. 1994) (unpublished).

Following my own review of the record, I am persuaded that a reasonable mind could accept the ALJ's explanation as adequate to support his RFC finding. I am also persuaded that the ALJ did not assume the role of medical expert in fashioning his RFC finding. The ALJ allowed for greater limitations than any acceptable medical source found, which favored Drew, without ignoring, failing to weigh, or misconstruing any medical opinion. Ultimately, he gave some weight, but not controlling weight, to PA-C Piotti's "other source" opinion. This was within his discretion, was supported by adequate grounds, and did not constitute legal error. Thus, I conclude that the Commissioner's RFC finding is supported by substantial evidence. The ALJ related his RFC finding to a vocational expert at the hearing and the vocational expert testified that a person with Drew's vocational profile and the stated RFC would be able to perform the telephone solicitor occupation. Consequently, the step 4 determination, too, is supported by substantial evidence.

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 27, 2012
/s/ Margaret J. Kravchuk
U.S. Magistrate Judge